UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AARON G.,

                Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,[1]

                Defendant.

CASE NO. C19-0246-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

    Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

    Plaintiff was born on XXXX, 1963.[2] He has a high school diploma, and has worked as a

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant in this suit.

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

car mechanic, material handler, cook helper, and lot attendant. (AR 89.)

Plaintiff applied for SSI in December 2014. (AR 130, 246-51.) That application was denied and Plaintiff timely requested a hearing. (AR 160-68, 170-79.)

On November 14, 2017, ALJ Glenn G. Meyers held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 65-99.) On December 13, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 15-27.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on December 26, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since December 18, 2014, the application date. (AR 17.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's lumbar and cervical degenerative disc disease, left shoulder degenerative joint disease, sphincter prolapse versus lax sphincter, carpal tunnel syndrome, adjustment disorder, and unspecified anxiety disorder. (AR 17-18.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 19-21.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work with additional limitations: he requires a sit/stand option provided at work, and can lift/carry 10 pounds frequently and occasionally. He can perform unskilled, repetitive, routine tasks in two-hour increments. He can occasionally reach overhead, and can frequently reach at or below shoulder level. He can frequently handle and finger. He cannot work at heights, balance, or drive, or work in proximity to hazardous conditions. He can occasionally stoop and crouch, but cannot squat, crawl, kneel, or climb ramps, stairs, ladders, ropes, or scaffolds. (AR 21.) With that assessment, the ALJ found Plaintiff unable to perform any of his past relevant work. (AR 25.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of transitioning to other representative occupations such as order caller, counter clerk, and information clerk. (AR 26-27.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) assessing certain medical opinions, (2) formulating the RFC assessment, and (3) entering findings at step five. Dkt. 10. The Commissioner contends that the ALJ's decision is free of harmful legal error and is supported by substantial evidence, and should therefore be affirmed.

### Medical opinion evidence

Plaintiff challenges the ALJ's assessment of opinions written by treating physician Kimo Hirayama, M.D., as well as a form opinion written by examining physician's assistant Bryan Blythe, PA-C. The Court will consider each disputed opinion in turn.

### Legal standards

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is also competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996).

### Dr. Hirayama

The ALJ noted Dr. Hirayama's status as a treating physician, but found that his 2015 and 2017 opinions (AR 450-57, 644-55) were entitled to only some weight because Dr. Hirayama relied on Plaintiff's subjective complaints regarding rectal prolapse, even though there is no

objective evidence of this condition. (AR 24.) The ALJ noted that Dr. Hirayama's opinions were "largely consistent" with the RFC assessment, and supported the lifting/carrying limits as well as the need for a sit/stand option. (AR 24.)

Plaintiff objects to the ALJ's summary of Dr. Hirayama's opinions and his characterizing them as documenting improvement: the ALJ noted that Dr. Hirayama rated Plaintiff's limitations as severe in 2015, but by 2017 he rated them moderate. (AR 24.) Plaintiff contends that the ALJ manufactured an inconsistency in Dr. Hirayama's opinions (Dkt. 10 at 8), but the Court disagrees: the ALJ was not attempting to justify discounting Dr. Hirayama's opinions when he described them as documenting improvement. Instead, the ALJ was explaining how the opinions are largely consistent with the RFC assessment. (AR 24.) The ALJ only provided one reason to discount Dr. Hirayama's opinions, and that was his reliance on non-credible self-report (specifically regarding rectal prolapse) in rendering his opinions. (AR 24.)

Plaintiff argues that the ALJ erred in focusing on the non-credible self-report portions of Dr. Hirayama's opinions rather than on the other objective findings he listed. Dkt. 10 at 8-9. But Dr. Hirayama explicitly cited Plaintiff's rectal prolapse as a reason why he needed to avoid prolonged walking and standing (AR 645, 652), and the ALJ explained in an unchallenged portion of the decision why Plaintiff's allegations of rectal prolapse were inconsistent with the record. (AR 22.) Because Dr. Hirayama explicitly relied on self-report that the ALJ specifically rejected (and Plaintiff does not challenge that finding), the ALJ was entitled to discount Dr. Hirayama's opinion. *See, e.g., Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (affirming an ALJ's discounting an examining physician's opinion that was based on inaccurate self-reporting).

<u>Mr. Blythe</u>

Mr. Blythe examined Plaintiff in August 2013, months before the alleged onset of disability

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 5

1  (December 9, 2013), and completed a form opinion describing his symptoms and limitations. (AR
2  367-71.) The ALJ noted that Mr. Blythe's opinion pertained to a time period adjudicated in a prior
3  ALJ decision where Plaintiff was found not disabled. (AR 24 (referencing AR 107-20).) The ALJ
4  also emphasized that there are no treating records for Mr. Blythe beyond this one-time
5  examination, and that he is a non-acceptable medical source. (AR 24.) The ALJ gave no weight
6  to Mr. Blythe's opinion. (AR 24.)

7  Plaintiff argues that the ALJ erred in discounting Mr. Blythe's opinion as predating the
8  adjudicated period, because the opinion post-dates the "original alleged onset date" in March 2012
9  Dkt. 10 at 11 (citing AR 109). The date Plaintiff cites is the alleged onset date in a prior application
10 that was adjudicated in a prior ALJ decision finding him not disabled. (AR 109.) That date is not
11 the original alleged onset date in the application adjudicated in the ALJ decision currently under
12 review (see AR 246), and Plaintiff's briefing obscures this fact. In any event, Mr. Blythe's opinion
13 predates the period adjudicated in the current ALJ decision and, as such, has limited relevance to
14 the ALJ's determination of Plaintiff's limitations during the time period under consideration. *See*
15 *Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical
16 opinions that predate the alleged onset of disability are of limited relevance."). That the
17 Commissioner develops the medical record for a year before the alleged onset date does not imbue
18 evidence from that period with relevance, particularly under these circumstances, where the
19 Plaintiff was found not disabled in an administratively final ALJ decision applying to most of the
20 year before the alleged onset date in this application, including the date of Mr. Blythe's
21 examination. Therefore, the Court finds that the ALJ's reasoning with regard to the timing of Mr.
22 Blythe's opinion is a germane reason to discount the opinion, and that the ALJ did not err with
23 respect to Mr. Blythe's opinion.

## RFC

At step four, the ALJ must identify the claimant's functional limitations or restrictions, and assess his or her work-related abilities on a function-by-function basis, including a required narrative discussion. *See* 20 C.F.R. §§ 404.1545, 416.945; Social Security Ruling (SSR) 96-8p, 1996 WL 374184 (Jul. 2, 1996). Plaintiff raises two challenges to the ALJ's RFC assessment, each of which the Court will address in turn.

### Sedentary v. light

Plaintiff argues that the ALJ erred in finding that he was capable of performing light work with additional restrictions, when the RFC assessment was actually consistent with sedentary work. Dkt. 10 at 2-3. According to Plaintiff, the ALJ erroneously characterized his RFC as such in order to avoid finding him disabled via application of the Medical-Vocational Guidelines ("the Grids"). *Id*.

As support for this argument, Plaintiff cites *Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995). In *Distasio*, the ALJ found that Plaintiff could perform light work, but the VE testified that the only work available consistent with the RFC assessment was sedentary work. 47 F.3d at 349. The Ninth Circuit held that because the Commissioner had not shown that the plaintiff was capable of performing any jobs other than sedentary jobs, the ALJ should have applied the Grid rule pertaining to a plaintiff limited to sedentary work, and found the plaintiff disabled. 47 F.3d at 349-50.

But here, the VE identified three light jobs that Plaintiff could perform with his RFC. (AR 90-91.) Although the VE did testify that the lifting requirements in Plaintiff's RFC could be consistent with sedentary work (AR 92), her identification of light jobs that Plaintiff could perform distinguishes this case from *Distasio*. Although Plaintiff asserts that the VE testified that Plaintiff

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 7

was limited to sedentary work (Dkt. 12 at 2, 3), she stated no such thing and instead identified light jobs that he could perform. Plaintiff has not shown that the ALJ erred in relying on that testimony.

Sit/stand option

The ALJ's RFC assessment includes a requirement that, *inter alia*, Plaintiff have a "sit/stand option provided at work[.]" (AR 21.) Plaintiff contends that this element of the RFC assessment is vague because it does not specify how long Plaintiff would be able to sit or stand at one time. Dkt. 10 at 4-5. Plaintiff cites two cases from this district for the proposition that an ALJ must specify the frequency with which a claimant must alternate between sitting and standing. *Id.* (citing *Craig v. Astrue*, 2013 WL 315737, at *4 (W.D. Wash. Jan. 9, 2013); *Brown v. Colvin*, 2016 WL 3248070, at *4-5 (W.D. Wash. May 23, 2016)). Both cases are distinguishable, however, as neither case involves an RFC assessment using the term "sit/stand option." This term refers to the ability to sit or stand at the employee's option, rather than on any set schedule. *See Sackett v. Berryhill*, 2019 WL 1787337, at *12-14 (D. Nev. Apr. 24, 2019) (surveying Ninth Circuit case law and applicable regulations at length to explain why "sit/stand option" refers to an employee's unlimited degree of choice regarding whether he or she sits or stands); *see also Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (finding the ALJ's use of the term "sit/stand option" to be consistent with a doctor's opinion that a claimant "needs the option to alternate positions frequently"); *Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 627 (9th Cir. 2011) (finding that on the record of that case, "sit-stand option" "is most reasonably interpreted as sitting or standing 'at-will'").

The ALJ's use of the term "sit/stand option" distinguishes this case from the cases cited by Plaintiff. In *Brown*, the ALJ's RFC assessment stated that the plaintiff could stand/walk for six hours per workday and sit for six hours per workday, "standing up and sitting down in place

without leaving the workstation[.]" 2016 WL 3248070, at *4. This limitation does not explicitly provide that the plaintiff could stand or sit at will, as does the term "sit/stand option," and thus *Brown*'s concerns of vagueness as to the frequency of switching between standing and sitting are inapplicable to the RFC assessment in this case.

*Craig* is even more clearly distinguishable: in that case, the ALJ found that Plaintiff could stand/walk for less than two hours per workday, and sit for at least six hours per workday, with the ability to "periodically alternate between sitting and standing." 2013 WL 315737, at *1. This Court found that RFC assessment to be vague because it did not specify the most that the plaintiff could do in terms of sitting, standing, or walking, or how frequently he would need to periodically alternate. 2013 WL 315737, at *2-3. The *Craig* RFC assessment is unlike the RFC assessment in this case because the ALJ here found that Plaintiff could sit or stand as long as he wanted to, and the VE testified that the jobs identified at step five could be performed either standing or sitting. (AR 93-94.) Again, the vagueness concerns expressed in *Craig* do not apply to the ALJ's RFC assessment here.

Plaintiff also cites SSR 96-9p, 1996 WL 374185 (Jul. 2, 1996), to argue that the ALJ erred in failing to specify how frequently he must alternate between sitting and standing, but again, the ALJ's RFC assessment does not contemplate that Plaintiff will alternate at any particular frequency, because a sit/stand option implies that Plaintiff can sit or stand whenever he wants to. Furthermore, SSR 96-9p advises that in situations where an ALJ finds that a claimant must alternate sitting and standing/walking at certain intervals, the ALJ should consult a VE to determine how that requirement impacts the claimant's ability to perform work. 1996 WL 374185, at *7. Here, the ALJ consulted a VE. Thus, SSR 96-9p does not support Plaintiff's assignment of

error in the ALJ's RFC with respect to the sit/stand option.[3]

For all of these reasons, the Court finds no error in the ALJ's RFC assessment as to Plaintiff's need for a sit/stand option.

### Step five

At step five, the Commissioner bears the burden to show that a claimant is not disabled because he or she can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). As to the specific other jobs identified at step five, the Dictionary of Occupational Titles (DOT) raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36 (VE testified specifically about the characteristics of local jobs and found their characteristics to be sedentary, despite DOT classification as light work). *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.").

In this case, Plaintiff argues that the ALJ erred at step five in finding that he could perform three jobs, whose requirements as defined in the DOT are inconsistent with his RFC. The Commissioner concedes error as to one of the jobs identified at step five, but argues that this error is harmless in light of the other two jobs identified. Dkt. 11 at 17. Plaintiff's opening brief suggests

---

[3] This contention was also rejected in an unpublished Ninth Circuit case indicating that an ALJ need not specify a frequency when finding that a claimant requires a sit/stand option, relying on a different SSR. *See Hanbey v. Astrue*, 506 Fed. Appx. 615, 617 (9th Cir. Jan. 29, 2013) ("The ALJ did not specify the frequency of the sit-stand option, but the relevant regulation did not require the ALJ to do so. SSR 83-12.").

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 10

that the other two jobs identified at step five were also flawed because they conflict with the DOT and the VE failed to adequately explain the conflict, but Plaintiff does not explicitly identify a conflict between those jobs and the DOT. Dkt. 10 at 15.

It may be that Plaintiff intended to argue that the ALJ erred in relying on the VE's testimony about the erosion of job numbers based on the sit/stand option and the reduced capacity for lifting and carrying, or the discrepancy between the step-five jobs and Plaintiff's reaching restrictions. Dkt. 10 at 15 (citing AR 26-27). Although Plaintiff cites *Lamear v. Berryhill* as support for his contention that the ALJ erred in relying on inadequately explained VE testimony, that case is distinguishable. *See* 865 F.3d 1201 (9th Cir. 2017).

In *Lamear*, the ALJ found that plaintiff was limited to occasional overhead reaching on the left side, and occasional handling, fingering, and feeling with his left hand. 865 F.3d at 1204. The VE testified that plaintiff could work as an office helper, mail clerk, or parking lot cashier, and the ALJ failed to ask the VE how the left-side restrictions were consistent with those jobs, which were defined in the DOT to require frequent handling, fingering and reaching. *Lamear*, 865 F.3d at 1205. The *Lemear* court concluded that "[a]bsent anything in the record to explain this apparent discrepancy, we must reverse and remand so the ALJ can ask the VE to reconcile these jobs with [plaintiff's] left hand limitations." 865 F.3d at 1206.

But in this case, the VE explained at length that she relied on her professional experience and knowledge to find that Plaintiff could perform certain jobs despite his RFC restrictions, and explained why she eroded the job numbers based on Plaintiff's specific RFC in light of her experience with workplaces. (AR 91-96.) The VE's explicit testimony about the conflicts between the DOT and her testimony distinguishes this case from *Lamear*, and thus Plaintiff has not identified a harmful error in the ALJ's step-five findings.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 11

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 13th day of September, 2019.

_____
Mary Alice Theiler
United States Magistrate Judge